## THE GOLIAH.

## THE LUTHER HOOPER.

## THE CHARLES T. RYAN.

## THE DEL RIO.

## THE AGNES MORAN.
### Nos. 17732, 17186.

District Court, E. D. New York.
Oct. 3, 1947.

Foley & Martin, of New York City (Christopher E. Heckman and Louis J. Lawrence, both of New York City, of counsel), for Eastern Transp. Co.

J. Vincent Keogh, U. S. Atty., of New York City (Tompkins, Boal & Tompkins, and Arthur M. Boal, of New York City, of counsel), for the U. S.

J. Vincent Keogh, U. S. Atty., of New York City (Leo J. Curren, of New York City, of counsel), for Peter Moran, Inc., claimant of Tug Agnes Moran.

GALSTON, District Judge.

The libel and cross-libel by stipulation were consolidated for the purposes of trial, and it was agreed that one decree may be entered to dispose of both.

Collisions occurred in the vicinity of Hell Gate Bridge on July 9, 1944, at approximately 12:26 p. m. between the S. S. Del Rio and the barges Luther Hooper and Charles and accordingly favored the Del Rio. Ahead T. Ryan, in tow of the tug Goliah; and between the tug Goliah and the tug Agnes Moran, which was assisting the Del Rio. At the conclusion of the trial, the main libel as against the tug Agnes Moran was dismissed, as was also the impleading petition as to the tug Agnes Moran in the cross-libel.

The Goliah and her barges, which she was towing 120 feet astern, were proceeding in a westerly direction; the S. S. Del Rio was proceeding easterly. The tide was flood, which meant that around Hell Gate it was flowing generally in an eastern direction, of the Del Rio, and between the two bridges, during the period immediately prior to the collision, was the tug Brimstone, which was towing four barges on hawsers. The presence of this Brimstone tow led to maneuvering by the Del Rio which ultimately brought about the collisions.

From the time that the Brimstone was in view of the Del Rio, the distance between the two was being reduced. The Del Rio, according to the bell book, proceeded at full speed from 11:16 to 11:25 and from 11:25 to 12:19. The pilot on the Del Rio knew what effect the tide would have on the Brimstone's tow when that tow went around Negro Point. He admitted that the Brimstone was

taking about half the channel in Hell Gate. He also admitted that the Goliah did not appear to be crossing from her own port to her own starboard hand side. On the other hand, the master of the Del Rio said that the Goliah was headed across the channel, as did the mate of the Del Rio. The fact was otherwise, for confirming the pilot of the Del Rio, Jacobson, pilot of the Brimstone, testified that the Goliah was as close to Ward's Island as it is possible to get, and so was the tow. Jacobson was corroborated as to that testimony by the mate of the Brimstone—and so indeed did the interested witnesses for the Goliah testify. I must conclude that on the basis of all of the testimony, considering both the interested witnesses and the disinterested witnesses, and in the light of the course of the Brimstone, the Goliah was well on her own starboard side of the channel.

The next important question to determine is the position of the Goliah and her tow with respect to Hell Gate and Triborough Bridges. Sundlof, the master of the Del Rio, said that at the time of the collision the Goliah's barges were about midway between the bridges. I cannot accept that version, for the preponderance of the credible testimony indicates that at the time of impact, the Goliah's barges were either directly under or very close to the Hell Gate Bridge. Again the situation is clarified by Jacobson of the Brimstone who said that at the time of the collision, "the Goliah and its tow was, well, I would say the tow was nearly directly underneath or perhaps a little west of the Hell Gate Bridge". The Goliah having 120 feet of hawser out would be west of the bridge at that distance.

Important also is Jacobson's testimony that as the Goliah proceeded up to that point, her speed was between a dead stop and half a mile. ·

Goodwin, the master of the Goliah, said that at the time of the collision the barges were directly under the Hell Gate railroad bridge, and the tugboat was just a little bit to the west. It appeared that the Goliah traveled about 100 yards from the time Goodwin heard the Del Rio's bend signal up to the time of collision, and about 65 yards from the time Goodwin first saw the Del Rio until the time of the accident. During that time the Del Rio traveled about 900 yards. Goodwin stopped his engines on hearing the bend signal and kept them stopped, except to the extent that he momentarily would go ahead for a second or two to keep the barges in line, and then would stop "right still with the tide". Corroborating Goodwin and his own master, Bedor of the Brimstone testified that at about the time of the collision the Goliah's tow was "just about underneath Hell Gate Bridge". So too, Pratt, captain of the Moran tug which had been assisting the Del Rio, placed the bows of the barges at the time of the collision slightly to the westward of Hell Gate railroad bridge. Even Breakey marked on Eastern's Exhibit 3, as the point of collision between the Del Rio and the barges, a point about four-fifths of the distance from the Triborough Bridge to the Hell Gate Bridge. He admitted that when he first saw the Goliah, the Goliah was at the place which he had marked as the point of collision between the Del Rio and the barges. Weighing all the testimony it would appear that the point of impact between the Del Rio and the Goliah's barges was very close to the Hell Gate Bridge, and also close to the Ward Island side.

It may be noted too that the Luther Hooper anchored almost immediately after the accident, and was picked up by the captain of a Card tow, and was found by him to be "anchored right under Hell Gate Bridge at, I should say, not more than 100 feet, if that, off Ward's Island. She· was so close I wouldn't go on the inside of her with the tugboat".

I conclude that the Goliah was free of fault and that the Del Rio should be held solely liable for the damages that resulted. The Del Rio did violate the narrow channel rule, see The Portchester, 2 Cir., 94 F.2d 644; The Brimstone v. The Fort Ash, D.C., 69 F.Supp. 268, affirmed on appeal. There was no such violation by the Goliah. It may be remaked too that the display to the Goliah of a red light from the easterly side of the Hell Gate railroad bridge did not require her to stop. Its effect was to caution an approaching vessel.

The libellant is entitled to a decree against the respondent, United States of America, and the cross-libel will be dismissed.

Concurrently with this opinion, findings of fact and conclusions of law will be filed.